**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**CIVIL ACTION NO. 3:07-CV-397-RJC-DCK**

| | | |
|---|---|---|
| RYAN J. KNIGHT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**THIS MATTER IS BEFORE THE COURT** on the Plaintiff's "Motion for Summary

Judgment" (Document No. 11) and "Plaintiff's Memorandum in Support of Motion for Summary

Judgment" (Document No. 12), filed February 15, 2008; and the Defendant's "Motion for Summary

Judgment" (Document No. 13) and "Memorandum in Support of the Commissioner's Decision"

(Document No. 14) filed April 7, 2008. This case has been referred to the undersigned Magistrate

Judge pursuant to 28 U.S.C. § 636(b)(1)(B), and these motions are now ripe for disposition.

Having considered the written arguments, administrative record, and applicable authority,

the undersigned finds that the Commissioner's decision to deny Plaintiff Social Security disability

benefits is supported by substantial evidence. Accordingly, the undersigned will respectfully

recommend that Plaintiff's Motion for Summary Judgment be DENIED, Defendant's Motion for

Summary Judgment be GRANTED, and the Commissioner's decision be AFFIRMED.

## I. PROCEDURAL HISTORY

This case has a lengthy history. Plaintiff filed an application for a period of disability, Social

Security disability insurance benefits, and Supplemental Security Income on February 7, 2003,

alleging that he became disabled on January 7, 2003 as a result of depressive disorder, anxiety, seizure disorder, and obesity. (Tr. 20). Plaintiff's claim was denied initially, and again on reconsideration. (Tr. 43, 45-49, 250-54). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on December 16, 2005. (Tr. 354). On January 17, 2006, the ALJ issued an opinion denying Plaintiff's claim. (Tr. 260-62).

Plaintiff filed a Request for Review of the Hearing Decision. (Tr. 279). On September 28, 2006, the Appeals Council remanded the case and ordered the ALJ to: (1) update the treatment evidence on the claimant's medical condition; (2) articulate how the ALJ had evaluated the severity of all medically determinable mental impairments under the special technique mandated by 20 C.F.R. §§ 404.1520(a), 416.920(a); (3) clarify how the ALJ evaluated the opinion evidence cited from the treating psychiatrist, Dr. Manejwala; (4) further consider the claimant's residual functional capacity ("RFC") on the updated record; and (5) secure evidence from a vocational expert ("VE") to clarify the effect of the assessed limitations on the claimant's occupational base. (Tr. 276-78).

A second hearing was held by the ALJ on January 20, 2007. (Tr. 393). The ALJ denied Plaintiff's claim for disability a second time on April 5, 2007, finding that he was not disabled as defined under the Social Security Act. (Tr. 15-31). Plaintiff requested a review of the hearing decision by the Appeals Council on April 12, 2007, and the Appeals Council denied the request for review on July 24, 2007, thereby making the ALJ's decision the final decision of the Commissioner. (Tr. 13, 8). Plaintiff filed this action on September 21, 2007, and the parties' cross-motions for summary judgment are now ripe for disposition. (Document No. 1). As stated above, the undersigned finds that the ALJ relied on substantial evidence to conclude that Plaintiff was not disabled as defined in the Social Security Act.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of final decisions of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner applied the correct legal standards. Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); Hays v. Sullivan, 907 F2.d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (*per curiam*). The Fourth Circuit defined "substantial evidence" as:

> being more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986), quoting Peales, 402 U.S. at 401.

The Fourth Circuit has made clear that it is not for a reviewing court to re-weigh the evidence or to substitute its judgment for that of the Commissioner, so long as that decision is supported by substantial evidence. Hays, 907 F.2d at 1456 (concluding that "it is not within the province of a reviewing court to determine the weight of the evidence"); see also Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). Ultimately, it is the duty of the Commissioner, not the courts, to make findings of fact to resolve conflicts in the evidence. Hays, 907 F.2d at 1456; King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979) (stating that "this court does not find facts or try the case *de novo* when reviewing disability determinations"); Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) (noting that "it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion"). Therefore, so long as the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the

reviewing court disagrees with the final outcome. <u>Lester v. Schweiker</u>, 683 F.2d 838, 841 (4th Cir. 1982), quoting <u>Hayes v. Gardner</u>, 376 F.2d 517, 520 (4th Cir. 1967); <u>see also</u> 42 U.S.C. § 405(g) (2008).

## III. DISCUSSION OF CLAIM

The ultimate question before the ALJ was whether at any time from January 7, 2003 to the present Plaintiff became "disabled" as that term of art is defined for Social Security purposes.[1] To make this determination, the ALJ must follow a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2006); <u>Hall v. Harris</u>, 658 F.2d 260, 264-65 (4th Cir. 1981).

The first step is determining whether the claimant is performing any gainful activity.[2] The ALJ determined here that Plaintiff had not engaged in substantial gainful activity since the alleged onset of his disability on January 7, 2003. (Tr. 20). Second, the ALJ must determine whether the claimant's medical condition is severe.[3] The ALJ ascertained that Plaintiff suffered from depressive disorder, anxiety, seizure disorder, and obesity. <u>Id.</u> Third, the ALJ must consider whether the claimant's impairment or combination of impairments meets or equals one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. 20 C.F.R. §§ 404.1520(d), 404.1525. 416.920(d), 416.925 (2006). The ALJ found that Plaintiff's impairments were not severe enough to prevent Plaintiff from doing any gainful activity, and therefore, the impairments did not meet or equal any

[1] Under the Social Security Act, 42 U.S.C. § 301, et seq., the term disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." <u>Pass v. Chater</u>, 65 F.3d 1200, 1203 (4th Cir. 1995).

[2] Substantial activity is defined as work involving significant physical or mental activities, which is done for pay or profit. 20 C.F.R. §§ 404.1527(a)-(b), 416.972(a)-(b).

[3] A severe impairment is an impairment or combination of impairments that significantly limit one's ability to perform both physical and mental basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c).

listed impairment. (Tr. 20).  Fourth, the ALJ must determine whether the claimant can perform his past relevant work.  The ALJ determined that Plaintiff was unable to perform any past relevant work. (Tr. 29).

Fifth and finally, however, the ALJ must ascertain whether the claimant, given his age, education, and past work experience, can perform any other work which exists in substantial numbers in the national economy.  The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform medium work with the following non-exertional limitations: no climbing, balancing, or exposure to hazards or unprotected heights; and simple, routine, repetitive jobs of low stress, non-production nature, with no factory jobs, no skilled jobs, and no jobs requiring extensive interaction with a large number of co-workers. (Tr. 23).  Based on the testimony of the vocational expert ("VE"), the ALJ determined that Plaintiff's RFC would allow him to perform certain jobs existing in significant numbers in the national economy.  (Tr. 22).  Based on the five-step evaluation process, therefore, the ALJ found the Plaintiff not disabled.

The Plaintiff now raises the following issues in this Court:  (1) whether the ALJ erred in failing to give proper weight to the opinions of Plaintiff's treating physicians; (2) whether the ALJ erred when assessing the credibility of Plaintiff's and Plaintiff's mother's testimony; (3) whether the ALJ erred in failing to evaluate Plaintiff's mental impairment and resulting functional limitations; (4) whether the ALJ erred in failing to consider Plaintiff's obesity when determining Plaintiff's ability to work; (5) whether the ALJ's RFC complied with Social Security Ruling 96-8p; (6) whether the ALJ erred in failing to consider the combined effect of all of Plaintiff's impairments; and (7) whether the decision of the ALJ is not supported by substantial evidence and violates the principles for disability determinations. (Document No. 12 at 2).

**A.    Whether the ALJ erred in failing to give proper weight to the opinions of Plaintiff's treating physicians.**

Plaintiff argues that the ALJ erred when determining his RFC because he failed to give sufficient weight to certain physicians' opinions.  Ultimately, the Plaintiff contends that the ALJ committed reversible error by failing to use substantial evidence in support of his RFC assessment when analyzing the medical evidence.  However, Defendant responds that the ALJ properly weighed the medical evidence and fairly determined Plaintiff's RFC based on the totality of the record.  The Court agrees with the Defendant.

**I.    Whether Dr. Manejwala's opinion should be given controlling weight.**

Plaintiff contends that Dr. Omar Manejwala's opinion must be given controlling weight because "it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence of the record." Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001); see also 20 C.F.R. § 404.1527(d)(2). Plaintiff contends that the ALJ's complete rejection of Dr. Manajwala's opinion, which is based on Plaintiff's Global Assessment of Functioning ("GAF")[4] of 60, does not qualify as substantial evidence because of numerous other findings of lower GAFs within the record. (Tr. 181, 202, 206, 309, 314, 316).

Defendant responds that Dr. Manejwala's opinions cannot be given "any special significance" when the opinions attempt to establish RFC and disability status, which are determinations reserved to the ALJ. 20 C.F.R. § 404.1527(e)(3).  Defendant also contends that the

---

[4] The Global Assessment of Functioning is a numeric scale used by mental health clinicians and doctors to rate the social, occupational and psychological functioning of adults. William C. Follette, Deborah Davis, & Richard A. Leo, Mental Health Status and Vulnerability to Police Interrogation Tactics, 22-FALL Crim. Just. 42, 46  (2007).

ALJ gave little weight to Dr. Manejwala's opinion because it was inconsistent with the medical evidence, and it is "perfectly reasonable" for an ALJ to emphasize clinical findings over a source's responses in medical questionnaires. LaCroix v. Barnhart, 352 F. Supp. 2d 100, 112 (D. Mass. 2005); see also Mason v. Shalala, 994 F.2d 1058 (3d Cir. 1993) (characterizing functional capacity assessments, standing alone, as "suspect" and "weak at best").

Further, Defendant contends that the ALJ does not need to provide a complete written evaluation of every piece of evidence in the record; therefore, the ALJ's failure to cite one GAF score does not make his RFC finding inaccurate. See Diaz v. Chater, 55 F.3d 300, 308 (7th Cir. 1995) (stating that "an ALJ need not provide a complete written evaluation of every piece of testimony and evidence); Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 241 (6th Cir. 2002) (determining that "the ALJ's failure to reference the GAF score in the RFC, standing alone, does not make the RFC inaccurate"); see also Querido v. Barnhart, 344 F. Supp. 2d 236, 246 (D. Mass. 2004) (holding that the unaddressed GAF ratings of 45 and 50 did not appreciably detract from RFC containing moderate mental limitations); Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998) (determining that "the ALJ's failure to cite specific evidence does not indicate that such evidence was not considered").

Defendant notes that because the RFC finding is a determination of the most a claimant can do despite his limitations, when the ALJ assessed Plaintiff's RFC, the ALJ reasonably focused on the GAF ratings that consistently reflected Plaintiff's maximum level of functioning. 20 C.F.R. § 404.1545. Plaintiff's lower GAF ratings were assessed at times when he was just beginning treatment or was noncompliant with psychotherapy or medication, and his higher ratings coincide with periods of compliance. Plaintiff declined recommended therapy initially at the Behavioral

Health Center in June of 2003, and his GAF was assessed at 50. (Tr. 210). In November of 2003, Dr. Bright noted that Plaintiff's medications had failed and he continued to decline psychotherapy despite a GAF of 49. (Tr. 202). In 2004, Plaintiff's GAF remained just above 50, and although he appeared anxious, he continued to decline therapy. (Tr. 196, 200, 194). In April of 2005, Plaintiff's GAF was in the moderate range, between 50 and 60, and upon starting therapy in the summer, his GAF increased to 60 or above, which is consistent with moderate to mild symptoms. (Tr. 186, 188). It was noted that his anxiety was "much improved," he reported that "things are going fairly well," and he was golfing and playing music. (Tr. 185). By January of 2006, Plaintiff stopped therapy, complained of panic attacks, and had a GAF of 50. (Tr. 316). However, in June of 2006, he began behavioral therapy again and his anxiety was under control; and in July he had a GAF of 61. (Tr. 322, 312).

Plaintiff's lower GAF ratings also correspond with Plaintiff's noncompliance with recommended medication. In August of 2003, Plaintiff started taking Lexapro and reported decreased anger outbursts, better control, and improved frustration tolerance. (Tr. 206). After being on the medication for seven weeks[5], his father expressed concern about Lexapro and Plaintiff discontinued use of the medication because of alleged headaches and anxiety, stating that he had "heard bad things about the medication." (Tr. 206). In April of 2004, Plaintiff stopped taking Buspar without his physician's consent and reported that he only wanted a medication he could take as needed. (Tr. 197-98). In 2006, Plaintiff refused to start taking Imipranine because he researched the medication on the Internet and decided that it was not right for him. (Tr. 313). Dr. Browning

---

[5] The maker of Lexapro advises that "acute episodes of major depressive disorder require several months or longer of sustained pharmacological therapy beyond response to the acute episode." Lexapro.com <http://www.frx.com/pi/lexapro_pi.pdf>.

reported that Plaintiff had been prescribed almost every medication available for his panic attacks, and he counseled Plaintiff about his reaction to medication and the need to remain on the prescribed medication. (Tr. 314). Dr. Browning further noted that Plaintiff had only a partial understanding of his condition and assessed a GAF of about 48. Id. The doctor recommended that Plaintiff try Lexapro again, but Plaintiff refused and stated that he would only take Ativan, which Dr. Browning refused to prescribe him at that time. (Tr. 314).

Based on the foregoing, the undersigned finds that the ALJ properly weighed Dr. Manejwala's opinion. RFC and disability status are determinations reserved to the ALJ. Also, the record as a whole illustrates that the ALJ reasonably assessed Plaintiff's GAF ratings, which consistently reflected Plaintiff's maximum level of functioning when Plaintiff was compliant with his psychotherapy and medications.

### ii. Whether Dr. Biber's records were correctly assessed.

Plaintiff alleges that the ALJ incorrectly relied on Dr. Biber's records in finding that the state agency psychologist's opinions were entitled to greater weight than those of Dr. Manajwala. Plaintiff contends that Dr. Biber treated Plaintiff in high school, not during the onset of his disability, and therefore his records should not be considered as substantial evidence.

Defendant responds that Dr. Biber's records and the state agency psychologist's opinions were entitled to greater weight than Dr. Manejwala's opinion. Dr. Biber treated Plaintiff for seven years before the relevant period, and also in March of 2003, which was after the alleged onset date of his disability. (Tr. 160). Dr. Biber assessed Plaintiff as having an inability to transition into adulthood, a fear of being on his own, and mismanagement of normative life crises. Id. The ALJ discussed other substantial evidence in support of his RFC finding by weighing other medical

assessments. Defendant alleges that although the ALJ discussed Dr. Biber's earlier reports, he did not rely solely on this evidence in accepting the state agency opinions over those of Dr. Manejwala. The ALJ gave considerable weight to the Behavioral Health Center treatment records, which constitute substantial evidence supporting his findings. (Tr. 27).

The undersigned finds that the ALJ properly weighed Dr. Biber's records because the ALJ did not rely exclusively on Dr. Biber's opinion in support of his determination. The ALJ considered other medical evidence within the record.

### iii. Whether the ALJ should have provided clarification of Dr. Rao's opinion.

Plaintiff contends that the ALJ's rejection of Dr. T. Hermanth Rao's opinion is unfounded because the ALJ determined Plaintiff's disability based on his own opinion, rather than objective medical evidence, and the ALJ must seek clarification from Dr. Rao concerning Plaintiff's limitations in order to establish whether Plaintiff is disabled.

Defendant responds by analyzing the record as a whole. In February 2003, Dr. Rao reported that Plaintiff was "applying for disability since he cannot drive," and commented that he "would support his application for disability" and noted that he hoped "once [Plaintiff's] bipolar disease and seizures [were] under better control after a few months, he may resume driving and hopefully return to the workforce." (Tr. 174). Notably, Plaintiff reported that he had a history of bipolar disease and Dr. Rao did not diagnose Plaintiff with this disease. Id. In May of 2003, Dr. Rao stated that Plaintiff was "unable to work due to his medical condition." (Tr. 176). In June of 2003, the doctor completed a county social services form indicating that Plaintiff would be disabled for at least six months. (Tr.

177). Defendant contends that Dr. Rao's disability opinion is not entitled to any special significance because he made determinations that were reserved for the ALJ. 20 C.F.R. § 404.1527(e)(3).

The ALJ rejected Dr. Rao's opinion because it was based on Plaintiff's inability to drive at that particular time, and his inability to drive does not render Plaintiff disabled. (Tr. 28). Defendant contends that Plaintiff could use public transportation, obtain rides from others, move close to a job, or walk to work. See Lopez Diaz v. Sec'y of Health, Educ., & Welfare, 585 F.2d 1137, 1140 (1st Cir. 1978) (stating that while an actual locomotive difficulty, which makes it impossible or extremely difficult to physically move the body is relevant to the disability, a mere commuting difficulty is not). Defendant further argues that Plaintiff continued to drive and owned his own car. (Tr. 383, 409). See Harmon v. Apfel, 168 F.3d 289, 293 (6th Cir. 1999) (alleging difficulty driving not relevant to disability where claimant "can and does drive her automobile to transport herself, at least to some extent").

Defendant further alleges that because Dr. Rao felt Plaintiff was disabled for "at least" six months, it does not necessarily meet the durational requirement that disability be expected to last for at least twelve months or result in death. 20 C.F.R. § 404.1509. Defendant argues that the ALJ's omission of the "at least" portion of Dr. Rao's opinion from his decision was harmless because Plaintiff failed to show that he would be disabled for any twelve-month period and Plaintiff continued to drive, regardless of Dr. Rao's opinion.

Defendant alleges that the ALJ was entitled to make reasonable inferences from the evidence that was before him, and therefore, the ALJ's determination that Dr. Rao's opinion was based on Plaintiff's inability to drive was warranted. Stevenson v. Chater, 105 F.3d 1151, 1155 (7th Cir. 1997); SSR 86-8. Defendant contends that Dr. Rao did not offer any specific functional limitations

in support of his opinion on disability and his prior exams were "completely nonfocal." (Tr. 174, 176-77). Therefore, Defendant argues that substantial evidence supports the ALJ's finding that Dr. Rao's disability opinion was merely based on the driving restriction, and the ALJ reasonably rejected the opinion, particularly given that an inability to drive does not render one disabled and that Plaintiff continued to drive.

Furthermore, Defendant contends that the ALJ did not have a duty to seek clarification from Dr. Rao as to the basis for his opinion on disability because the authority Plaintiff cites is premised on the ALJ finding that the evidence is inadequate to assess the disability. 20 C.F.R. §§ 404.1512(e), 404.1527(c)(3). Defendant alleges that even when some of the evidence is inconsistent, as long as the evidence as a whole is sufficient for the ALJ to render a decision, the ALJ will weigh all of the evidence to determine whether a claimant is disabled. 20 C.F.R. § 404.1527(c)(2). In the instant case, the record contains substantial evidence and therefore the ALJ is not required to re-contact a treating source. 20 C.F.R. § 404.1512(e); see also Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002) (determining that an ALJ's disagreement with a physician's opinions is not equivalent to a finding that evidence from the physician is inadequate to assess disability); White v. Masanari, 271 F.3d 1256, 1261 (10th Cir. 2001) (stating that "it is the inadequacy of the record, rather than the rejection of the treating physician's opinion, that triggers the duty to re-contact that physician"). The ALJ is not required to re-contact a treating physician "whenever the record as a whole (or a treating physician's particular contribution to the record) fails to support his opinions" and to find otherwise would improperly place the burden of establishing disability on the Commissioner. Alejandro v. Barnhart, 291 F. Supp. 2d 497, 512 (S.D. Tex. 2003), quoted in Jackson v. Barnhart, 368 F. Supp. 2d 504, 509 (D. S.C. 2005).

Defendant also contends that Dr. Rao's opinion was clear and therefore the ALJ is not required to re-contact the treating physician for this reason. SSR 85-16. Dr. Rao opined that Plaintiff was disabled because of his inability to drive. See Newton v. Apfel, 209 F.3d 448, 458 (5th Cir. 2000) (determining that even if Plaintiff's argument was true, the reversal of the ALJ's decision is only appropriate if Plaintiff "shows prejudice from the ALJ's failure to request additional information"). Defendant argues that the ALJ is not required to re-contact Dr. Rao when determining Plaintiff's RFC because the ALJ can support his RFC finding with assessments from any medical source. Oberdert v. Barnhart, 413 F. Supp. 2d 800, 804 (E.D. Tex. 2006).

Based on the foregoing reasons, the undersigned finds that the ALJ correctly assessed Dr. Rao's opinion because the opinion determined disability based on Plaintiff's inability to drive, which is not enough to qualify the Plaintiff as disabled; and the ALJ is not required to seek clarification from Dr. Rao because the ALJ is not obligated to re-contact physicians when he can determine disability based on the totality of the record.

### iv. Whether the ALJ is required to consider the factors for rejecting Dr. Manejwala and Dr. Rao's opinions.

Plaintiff contends that when evaluating any medical source opinion, the ALJ is required to consider the factors listed in the regulations. § 20 C.F.R. § 404.927 (d)(2)-(5). Plaintiff argues specifically that in order to determine the weight given to the opinion, the ALJ must consider: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) supportability; (4) consistency; and (5) specialization. Pittman v. Massanari, 141 F. Supp. 2d 601, 608 (W.D.N.C. 2001). Plaintiff contends that because the ALJ did

not consider these factors, Dr. Manejwala and Dr. Rao's opinions should be given controlling weight.

Defendant argues that Dr. Manejwala and Dr. Rao's opinions could not be given "any special significance" because they simply determined that Plaintiff was disabled rather than listing his limitations. 20 C.F.R. § 404.1527(e)(3). Defendant contends that it is ultimately the duty of the ALJ to "give good reasons" for the weight afforded to an opinion. Id. In the instant case, the ALJ acknowledged the relevant factors and gave good reasons for rejecting the opinions based on disability. (Tr. 27); Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004). The ALJ opined that Dr. Manejwala's opinion was inconsistent with the record as a whole and his GAF finding was inconsistent with other GAF findings within the record. The ALJ determined that Dr. Rao's opinion was improperly based on Plaintiff's inability to drive, rather than specific functional limitations, and the ALJ referred to other substantial evidence that contradicts Dr. Rao's opinion. (Tr. 27-29).

The undersigned finds that based on the facts stated above, the ALJ correctly considered and weighed Dr. Manejwala's and Dr. Rao's opinions and was not obligated to explicitly list out the factors; rather he needed only to give good reasons for disqualifying the opinions, which he did.

**B.      Whether the ALJ erred when assessing the credibility of Plaintiff's and his mother's testimony.**

Plaintiff argues that a conclusory finding regarding the testimony of the Plaintiff and his mother violated SSR 96-7p. Plaintiff contends this occurred when the ALJ summarily stated that "the testimony of the claimant and his mother was credible to the extent that the claimant should not work around hazardous equipment and would have difficulty working in a crowd, but not to the extent that he is disabled as defined by the Regulations." (Tr. 25). Plaintiff alleges that the ALJ is

required to make credibility determinations, which refer specifically to the evidence on which the ALJ bases his conclusion. Hatcher v. Sec'y DHHS, 898 F.2d 21, 23 (4th Cir. 1989). The ALJ must consider certain factors when evaluating credibility, such as medical signs, diagnoses, medical opinions, prior work records and efforts to work, daily activities, the consistency of the individual's statements, a longitudinal record of treatment, and attempts to seek treatment for pain. SSR 96-7p; 20 C.F.R. § 404.1529. Plaintiff contends that the ALJ was required to provide specific reasons for rejecting the subjective testimony, which must be supported by the evidence in the case record, and it "must make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p.

Defendant responds by illustrating the specific reasons grounded in the evidence for finding that Plaintiff's subjective statements were not entirely credible. When the ALJ assessed Plaintiff's credibility, the ALJ considered the relevant credibility factors and discussed the specific evidence that supported his conclusion. (Tr. 23-24). The ALJ noted that Plaintiff testified to having seizures at night about every six months, that he had gone a year and a half without a seizure, and that Dr. Rao opined that the seizures generally were well controlled with medicine. (Tr. 24-25). He considered Plaintiff's testimony that his Dilantin level was almost always low despite his compliance with the medication, but noted that there was evidence within the record that Plaintiff was noncompliant with his medications, which sometimes ultimately resulted in seizures. (Tr. 25). Additionally, the ALJ noted Plaintiff's substance abuse, which Dr. Rao opined could contribute to his seizures. (Tr. 28).

Defendant also alleges that the ALJ considered Plaintiff's complaints of pain and tingling in his legs, his left-side pain, and his chest pain, but he reasonably concluded that such complaints were

exaggerated based on Plaintiff's statements to his treatment providers. (Tr. 24-25). Dr. Rao's treatment notes indicate that Plaintiff did not complain about these pains and that his physical exams were generally nonfocal, with one instance of a mildly impaired tandem gait. Id. Similarly, Dr. Wong's notes reflect that Plaintiff complained of chest discomfort, shortness of breath, and heart palpations on one occasion; nevertheless, Dr. Wong told Plaintiff that he could exercise. (Tr. 223). Plaintiff also complained to Dr. Wong about back discomfort on one occasion, which Dr. Wong felt was musculoskeletal, and Plaintiff was given Flexeral. (Tr. 231). Additionally, the ALJ noted that Plaintiff only took Advil for his alleged pain and did not need to take over-the-counter medication every day. (Tr. 24). Although Plaintiff contended that his left-side pain resulted from his anxiety, his mental health records do not support this allegation, and Dr. Wong's notes do not reflect significant pain complaints or related physical findings.

Defendant also alleges that the ALJ considered Plaintiff's allegations concerning his mental impairments and found that they were inconsistent with the medical evidence, including Plaintiff's own statements to his treatment providers. (Tr. 26). Plaintiff reported that he had a history of bipolar disorder to the ALJ, to Dr. Rao, and to other treatment providers; however, his earlier records reflect an adjustment disorder with depression and possible dysthymia. (Tr. 50, 139, 156, 166, 174, 362). Although Plaintiff alleged depression and anxiety, records from 2003 show that he was diagnosed with cannabis dependence and reflect that he never had trouble understanding, but instead was withdrawing socially in order to spend more time abusing marijuana. (Tr. 166-67). Records from Behavioral Health Centers show that Plaintiff typically had moderate symptoms and otherwise was not compliant with his medication and psychotherapy. Overall, Defendant contends the treatment records reflect that, contrary to Plaintiff's contentions, his mental impairments and resulting

symptoms were under good control when he followed through with treatment. (Tr. 185, 206, 222, 312, 322, 325).

Defendant also notes that the ALJ discussed Plaintiff's allegations of agoraphobia and daily panic attacks and determined that they were inconsistent with his activities, which included taking walks, going to the mall or shopping, attending church, going to the beach, meeting with friends, and playing music in a band. (Tr. 26). Although Plaintiff testified that he did not partake in these activities regularly, the ALJ could consider this evidence in assessing credibility and did not have to accept Plaintiff's self-serving statements. See Rollins v. Massanair, 261 F.3d 853, 857 (9th Cir. 2001) (stating that "it is true that [Plaintiff's] testimony was somewhat equivocal about how regularly she was able to keep up with all of these activities, and the ALJ's interpretation of her testimony may not be the only reasonable one, but it is still a reasonable interpretation and is supported by substantial evidence; thus, it is not our role to second-guess it"). Additionally, the record shows that Plaintiff made inconsistent statements about his substance abuse, testifying that he had been clean since the age of twenty, while his mother testified that he continued to use substances, even against Dr. Rao's advice. (Tr. 211, 372-73, 384-85, 423).

Defendant further contends that Plaintiff testified that he was unable to get a good night's sleep, partly due to restless leg syndrome. (Tr. 364, 400). Notably, Plaintiff contends in his memorandum that he never testified that his sleep was poor due to restless leg syndrome, when Plaintiff explicitly stated that he does lose sleep due to restless leg syndrome on two separate occasions. (Document No. 12 at 17). However, the ALJ discussed that Dr. Rao attributed Plaintiff's sleeping difficulties to anxiety, but that his anxiety steadily improved with medication and Plaintiff no longer complained of insomnia on those visits. (Tr. 25, 244, 322, 325). Plaintiff also testified that

a sleep study showed that he did "a lot of kicking at night." (Tr. 401). However, this is inconsistent with the actual evidence from Plaintiff's sleep study, which assessed "insignificant" periodic leg movements without arousal and only mild periodic limb movements with arousal, and concluded that Plaintiff exhibited excessive drowsiness likely resulting from poor sleep efficiency. (Tr. 235, 237).

Defendant argues that the ALJ does not need to provide a written evaluation of every piece of evidence and is not burdened with the task of "mentioning every piece of evidence" in the record. Diaz, 55 F.3d at 308; Parks v. Sullivan, 766 F. Supp. 627, 635 (N.D. Ill. 1991) (determining that "the ALJ does not need to meet the impossible burden of mentioning every piece of evidence, but he or she has at the least the obligation to provide justification for rejecting considerable evidence that is both counter to the Secretary's position and is essentially uncontradicted). Significantly, Defendant notes that in September 2005, Plaintiff was assessed with a GAF rating of over 60 and reported that "things are going fairly well" and that he was golfing and playing music. (Tr. 185-86). Subsequently, Plaintiff stopped psychotherapy and wanted to get back on medication for his anxiety, and by February 2006, four months after some increased anxiety, Plaintiff's anxiety was "under good control" and "much improved." (Tr. 325). Therefore, Defendant contends that the short period of increased anxiety does not reasonably reflect the typical severity of Plaintiff's impairments during the relevant period, but instead, appears to correspond with Plaintiff's lapse in therapy.

Lastly, Defendant argues that the ALJ could consider any inconsistencies in the evidence, including Plaintiff's alleged misstatement about bipolar disorder, and could reasonably expect that an adult patient would be aware of his own diagnosis and thereby be able to relate it to his providers. SSR 96-7p. Moreover, Defendant contends that the ALJ considered other inconsistencies within the testimony and therefore there is substantial evidence to support his credibility finding. Cf. Batson

v. Comm'r Soc. Sec. Admin., 359 F.3d 1190, 1197 (9th Cir. 2004) (affirming a credibility finding where one of several reasons was unsupported by the record).

Based on the totality of the record, the undersigned finds that the ALJ did not make a conclusory decision, and there is substantial evidence within the record to support the ALJ's credibility determinations.

### C. Whether the ALJ erred in failing to evaluate Plaintiff's mental impairment and resulting functional limitations.

Plaintiff argues when there is evidence of a mental impairment that allegedly prevents a claimant from working, the ALJ must follow the procedure for evaluating mental impairments set forth in 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations provide that there is a five-point scale to rate the degree of limitation in activities of daily living, social functioning, and concentration, persistence, or pace: none, mild, moderate, marked, and extreme. 65 Fed. Reg. 50774 (Aug. 21, 2006), 65 Fed. Reg. 60584 (Oct. 12, 2000). Further, the regulations provide a four-point scale to rate the degree of limitation in a fourth functional area of episodes of decompensation: none, one or two, three, four or more. Id. Plaintiff contends that although the ALJ is no longer required to complete the Psychiatric Review Technique Form, he must document application of the technique in the decision. See 20 C.F.R. §§ 404.1520(a)(e)(2), 416.920(a)(e)(2) (listing the necessary factors to consider for documentation). Plaintiff alleges that the ALJ did not indicate in his decision whether he applied the technique to determine Plaintiff's mental impairment; and despite the direction from the Appeals Council to document this technique, the ALJ failed to comply with the regulations.

Defendant contends in response that the ALJ found that Plaintiff had no marked mental limitations and stated that "in assessing the B criteria on the psychiatric review technique form, [the

ALJ has] given substantial weight to the findings of the State agency consultants, Dr. E. Burgress and Dr. Lavonne Fox." (Tr. 22). Defendant argues that the ALJ stated that he agrees "with Dr. Burgess's assessment that the claimant's mental impairment causes [a] mild restriction of activities of daily living and moderate difficulties in maintaining social functioning." (Tr. 22). Further, Defendant contends that the ALJ continued his analysis, stating that he also agrees with "Dr. Burgess's assessment that the claimant had moderate difficulties in maintaining attention, concentration, persistence or pace." (Tr. 22). Lastly, the ALJ noted that Plaintiff "has not experienced any extended episodes of decompensation." (Tr. 22). Defendant argues that the ALJ discussed supporting evidence of his findings relative to the "B criteria," and determined that Plaintiff had severe mental impairments, but they were not of listing-level of severity. (Tr. 20-22). Defendant notes that Plaintiff has the burden to show that Plaintiff has impairments of listing level severity and Plaintiff has failed to overcome this burden. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

Based on the foregoing reasons, the undersigned finds that the ALJ correctly assessed Plaintiff's mental impairment because the ALJ followed the procedure determined in the regulations by documenting the application of the regulatory technique within his decision.

**D.** **Whether the ALJ erred when he failed to consider Plaintiff's obesity when determining Plaintiff's ability to work.**

Plaintiff argues that although the ALJ determined that Plaintiff's obesity was a severe impairment, the ALJ erred when he failed to incorporate a reason within his decision complying with Social Security Ruling 02-01p. Plaintiff contends that the ALJ's conclusory statement determining Plaintiff's obesity fails to comply with the Ruling stating that "as with any other impairment, [the

ALJ] will explain how [the ALJ] reached [his] conclusions on whether obesity caused any physical or mental limitations." SSR 02-01p. Further, Plaintiff alleges that the ALJ failed to consider in his RFC assessment Plaintiff's "maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis" and therefore committed reversible error. Id.

Defendant contends that the ALJ evaluated Plaintiff's obesity under the Ruling, discussed the evidence of Plaintiff's obesity, found that the obesity was a severe impairment, and found that it specifically limited Plaintiff's RFC to medium exertional work. (Tr. 20, 21, 23, 29). Defendant argues that throughout the record, medical evidence showed that Plaintiff had no exertional limitations, Plaintiff was encouraged to exercise in order to lose weight, which he did, and Plaintiff never alleged disability due to obesity. (Tr. 50, 55, 86, 95, 99, 108, 178, 185, 187, 189, 197, 201, 203, 207, 223, 236, 308, 311, 313, 315, 318, 322, 344, 399); see also Dunahoo v. Apfel, 241 F.3d 1033, 1039 (8th Cir. 2001) (determining that claimant's failure to allege impairments in a disability application supported ALJ's finding that the impairment caused no significant limitations). Defendant alleges that the ALJ specifically found that Plaintiff's obesity precluded him from "strenuous activity such as heavy lifting," but that he otherwise was able to lift, carry and push or pull fifty pounds occasionally and twenty-five pounds frequently and could sit, stand, and walk for up to six hours each work day, with no postural or manipulative limitations resulting from obesity. (Tr. 29).

Because the ALJ included Plaintiff's ability to work based on his obesity within his RFC determination, the ALJ is not required to provide a specific finding on the ability to maintain employment in every case. Perez v. Barnhart, 415 F.3d 457, 465 (5th Cir. 2005), citing Frank v.

Barnhart, 326 F.3d 618 (5th Cir. 2003) (determining that the ALJ does not need to "make a specific finding regarding the claimant's ability to maintain employment in every case"). Defendant contends that Plaintiff is attempting to argue that Plaintiff cannot work at all due to his alleged symptoms and this contention was rejected by the ALJ. (Tr. 25-26). Moreover, Defendant argues that Plaintiff has the burden of establishing his RFC; however, Plaintiff cites no credible evidence concerning his obesity or alleged resulting limitations, and therefore, Plaintiff failed to show that the ALJ erred in considering his obesity. See Rutherford v. Barnhart, 399 F.3d 546, 552-53 (3d Cir. 2005) (stating that the ALJ's failure to even consider obesity did not warrant remand where claimant did not show how obesity would affect the outcome of the case); Forte v. Barnhart, 377 F.3d 892, 896-97 (8th Cir. 2004) (determining that even a complete failure to discuss obesity was a harmless error where no physician assessed work related limitations).

Based on the foregoing reasons, the undersigned finds that the ALJ sufficiently incorporated Plaintiff's obesity into assessing Plaintiff's RFC, which was based on substantial evidence within the record.

### E.     Whether the ALJ complied with Social Security Ruling 96-8p.

Plaintiff alleges that the ALJ failed to incorporate a function-by-function analysis of Plaintiff's nonexertional capacities when determining Plaintiff's RFC. SSR 96-8p. Plaintiff contends that the ALJ erred because he failed to meet the requirement that the "RFC is the individual's maximum remaining ability to perform sustained work on a regular and continuing basis; i.e. 8 hours a day, for 5 days a week, or an equivalent work schedule [and] it is not the least an individual can do, but the most, based on all the information in the case record." Id. Ultimately, Plaintiff argues that by failing to properly determine Plaintiff's RFC as required in SSR 96-8p, the

ALJ's decision is not supported by substantial evidence and fails to comply with the standards set forth in SSR 96-8p.

Defendant contends that the ALJ followed the requirements determined in SSR 96-8p because he considered several nonexertional limitations within his decision. The ALJ determined that Plaintiff's seizure disorder precluded nonexertional activities of climbing and balancing, as well as exposure to hazards such as dangerous equipment and unprotected heights. (Tr. 23). Defendant further alleges that the ALJ found that Plaintiff's anxiety and associated chest pain and his use of medication interfered with his ability to perform complex tasks and that his depression and anxiety prevented him from dealing with large numbers of people and precluded work in a highly stressful environment, such as one requiring a high-speed pace or keeping up with a production line. (Tr. 23). Therefore, the ALJ limited Plaintiff to simple, routine, repetitive jobs of a low-stress, non-production nature, with no factory jobs, no skilled jobs, and no jobs requiring extensive interaction with a large number of co-workers. (Tr. 23). Defendant argues that the ALJ considered nonexertional limitations resulting from Plaintiff's various impairments and expressed those limitations in the RFC. Defendant concludes that although the Plaintiff quotes at length from SSR 96-8p, Plaintiff failed to explain with any degree of specificity why he felt the ALJ's decision does not comply with the Ruling. Therefore, argues Defendant, because the ALJ's decision is supported by substantial evidence and Plaintiff has not illustrated any prejudicial error with respect to Ruling 96-8p, the ALJ's decision should be affirmed.

The undersigned finds significant support for Defendant's position and determines that the ALJ followed the requirements set forth in SSR 96-8p because the ALJ explicitly considered several nonexertional limitations within his decision.

**F.      Whether the ALJ adequately considered the combined effect of Plaintiff's impairments.**

Plaintiff argues that the ALJ failed to consider the combined impact of all of Plaintiff's impairments. Plaintiff contends that Plaintiff's treating physicians repeatedly noted problems with him and his mental statements. Plaintiff alleges that in this Circuit, "it is axiomatic that disability may result from a number of impairments which, taken separately, might not be disabling, but whose total affect, taken together, is to render claimant unable to engage in substantial gainful activity [and] in recognizing this principle, this Court has on numerous occasions held that in evaluating the effect of various impairments upon a disability benefit claimant, the Secretary must consider the combined effect of a claimant's impairments and not fragmentize them." Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989); see also Bowen v. Yuckert, 482 U.S. 137, 150-51 (1987) (stating that "the Secretary shall consider the combined effect of all the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity. If the Secretary does not find a medically severe combination of impairments, the combined effect of the impairments shall be considered throughout the disability determination process"), quoting 42 U.S.C. §§ 423(d)(2)(C), 1382(c)(a)(3)(F) (1982 ed, Supp. III); 20 C.F.R. §§ 404.1523, 416.923. Plaintiff argues that even if the entire record did not belie the ALJ's statements, such an observation does not negate the ALJ's duty to consider all of the claimant's impairments in combination.

Defendant contends that an ALJ's finding that multiple impairments do not render a claimant disabled will be upheld unless the ALJ "so fragmentized [Plaintiff's] several ailments that he failed properly to evaluate their effect in combination upon [Plaintiff]." Owens v. Heckler, 770 F.2d 1276, 1282 (5th Cir. 1985), quoting Dillon v. Celebrezze, 345 F.2d 753, 757 (4th Cir. 1965). Defendant

argues that in the instant case the ALJ found severe impairments of a depressive disorder, anxiety, a seizure disorder, and obesity. (Tr. 20). The ALJ considered evidence of Plaintiff's alleged seasonal allergies, asthma, reflux, headaches, and sleep apnea and reasonably found that these impairments were not severe. (Tr. 22). He determined that Plaintiff "did not have an impairment or combination of impairments" of listing-level severity. (Tr. 22). The ALJ stated that he considered the entire record and discussed Plaintiff's subjective statements, the objective medical evidence, and the various physicians' opinions as to the severity of Plaintiff's impairments and their resulting limitations. (Tr. 20-29). See Raney v. Barnhart, 396 F.3d 1007, 1011 (8th Cir. 2005) (determining that the ALJ properly considered combined effect of impairments where he listed the impairments, expressly stated that he considered them individually and in combination, based his RFC on the combination of impairments and found that the impairments, in combination, were not of listing level severity). Additionally, Defendant contends that the ALJ's hypothetical question to the VE included all of the exertional and nonexertional limitations that he reasonably found present based on all of Plaintiff's impairments. (Tr. 425-27). Defendant contends that the VE's testimony, which the ALJ considered in rendering his finding at step five, was by necessary implication based on a consideration of the combined effect of Plaintiff's impairments.

The undersigned finds that, based on the aforementioned reasons, the ALJ adequately considered and combined Plaintiff's impairments and incorporated them into his RFC, which the VE considered when determining the availability of jobs in the national economy.

**G.** **Whether the decision of the ALJ is supported by substantial evidence and violates the principles for disability determinations and decisions set forth in SSR 86-6.**

Plaintiff alleges last that an objective reading of the record illustrates that the ALJ's decision is based on his presumptions, speculations, and suppositions, and they are without the evidentiary support as required by SSR 86-8. Plaintiff argues that the regulations require that the decision of the ALJ must be supported by substantial evidence, and if it is not, then it warrants review by the Appeals Council. 20 C.F.R. §§ 404.970(a)(3), 416.1470(a)(3). Plaintiff contends that although the ALJ can make reasonable inferences, it cautions that "presumptions, speculations, and suppositions should not be substituted for evidence." SSR 86-8. Therefore, Plaintiff alleges that without evidence to support the ALJ's conclusion, the ALJ had no basis for his decision and Plaintiff's disability claim should be approved.

Defendant contends that based on the ALJ's decision itself and the arguments set forth in the Defendant's preceding arguments, the ALJ complied with Social Security Ruling 86-8p and therefore did not commit any reversible error because his decision is supported by substantial evidence. Moreover, the VE found that there were significant jobs in the national economy which Plaintiff could perform, based on his age, education, and RFC. (Tr. 30). The VE testified that Plaintiff would be able to perform the requirements of representative unskilled occupations, such as laundry laborer, order picker, hand packager, and night business cleaner. Id. Therefore, because the ALJ met his burden to establish jobs in the national economy available to Plaintiff based on his limitations, Plaintiff is not disabled.

## IV. RECOMMENDATIONS

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that Plaintiff's "Motion for Summary Judgment" (Document No. 11) be **DENIED**; that Defendant's "Motion for Summary Judgment" (Document No. 13) be **GRANTED**; and that the Commissioner's determination be **AFFIRMED.**

## V. NOTICE OF APPEAL OF RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. § 636(b)(1)(cd), written objections to the proposed findings of fact and conclusion of law and the recommendation contained in this Memorandum must be filed within ten (10) days after service of same. Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Snyder v. Ridenhour, 889 F.2d 1363, 1365 (4th Cir. 1989); United States v. Rice, 741 F. Supp. 101, 102 (W.D.N.C. 1990). Failure to file objections to this Memorandum with the district court constitutes a waiver of the right to de novo review by the district court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder, 889 F.2d at 1365. Moreover, failure to file timely objections will also preclude the parties from raising objections on appeal. Diamond, 416 F.3d at 316; Wells, 109 F.3d at 201; Page, 337 F.3d at 416 n. 3; Thomas v. Arn, 474 U.S. 140, 147 (1985); Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; and to the Honorable Robert J. Conrad, Jr.

**SO RECOMMENDED AND ORDERED.**

Signed: September 30, 2008

David C. Keesler
United States Magistrate Judge